IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY J. SEIFERT,<br><br>                  Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE CO. OF AMERICA, et al.,<br><br>                  Defendants. | CIVIL ACTION<br>NO. 13-7637 |

<u>OPINION</u>

**Slomsky, J.**                                                                                                                      June 18, 2014

**I.    INTRODUCTION**

Plaintiff Timothy J. Seifert ("Plaintiff") brings this action against The Prudential Life Insurance Co. of America, Prudential Annuities Distributors, Inc., and Prudential Financial, Inc. (collectively "Defendants" or "Prudential"). Plaintiff alleges four claims against Defendants. In Count I, he alleges breach of contract. In Count II, he alleges breach of implied contract. In Count III, he alleges unjust enrichment. In Count IV, he alleges breach of fiduciary duty.

On January 6, 2014, Defendants filed a Motion to Dismiss all claims. (Doc. No. 5.) This Motion is now ripe for disposition. For reasons that follow, Defendants' Motion to Dismiss will be granted.

**II.   BACKGROUND**

In September 2009, Plaintiff was employed as Senior Managing Director for The Hartford, a financial services group. (Doc. No. 1-6 at ¶ 18.) In September 2009, Bruce Ferris, Vice President of Sales and Distribution at Prudential, recruited Plaintiff to leave The Hartford and join Prudential, an insurance and financial services company. Ferris offered Plaintiff a

1

position at Prudential as the Vice President and Director of National Sales, and Plaintif entered into negotiations to take the position.  (Id. at ¶ 20.)

As a result of his work at The Hartford, Plaintiff had accumulated a valuable incentive package (the "Hartford Incentives").  (Id. at ¶ 22.)  Accordingly, when Plaintiff entered into negotiations with Ferris to join Prudential, he demanded that consideration be given to the forfeiture of his Hartford Incentives as part of his Prudential compensation package.  (Id. at ¶ 23.)  To this end, Plaintiff submitted documentation regarding the Hartford Incentives to Prudential so that he could be given the same incentive package at Prudential that he was forfeiting at The Hartford.  (Id. at ¶ 24.)

On August 1, 2009, Plaintiff received an offer from Sheila Flynn, the Vice President of Human Resources at Prudential.  (Id. at ¶ 28.)  The offer stated that Plaintiff would be given a special 2009 Long-Term Incentive award ("Prudential Incentives") with a compensation value of $150,000.  (Id. at ¶ 28.)  This offer was later revised to $800,000.  (Id. at ¶ 30.)

On August 27, 2009, Prudential sent an offer letter to Plaintiff, along with an explanatory cover letter dated August 21, 2009 ("Offer Letters").  The Offer Letter of August 27, 2009 stated:

> Dear Tim,
>
> As noted on page 2 of your revised offer letter of August 21, 2009 (copy attached), consideration would be given to the forfeiture of your un-exercisable Hartford Financial Services and Planco equity and long-term incentives.  I am pleased to confirm that based on the review of the documentation you submitted, you will be granted a special 2009 Long-Term Incentive award and as cash "sign-on" bonus.  The Long-Term award will be made under the Prudential Financial Inc. Omnibus Incentive Program ("Program") in accordance with the terms of the Program that may be in effect from time to time.  Details of this award and the bonus are as follows:
>
> - Subject to appropriate approvals, you will be granted a Long-Term Incentive with a compensation value of no less than

>$800,000 at the time of the grant during the month following your date of hire, as determined by Prudential in it [sic] sole discretion in accordance with its standard compensation practices. The award will be comprised of restricted stock units with a compensation value of no less than $600,000 and stock options with a compensation value of no less than $200,000. To be eligible for this award you must be actively employed with Prudential and performing your job satisfactorily at the time of the award.

(Id., Ex. 1.) The explanatory cover letter of August 21, 2009 states:

>Dear Tim:
>
>I am very pleased to offer you the position of Vice President and Director, National Sales, Prudential Annuities. This position reports to Bruce Ferris, Vice President, Sales and Distribution. It is expected that you will be appointed on or about September 14, 2009.
>
>I would like to outline the compensation and benefits package that will be available to you while you remain employed in this position. Unless otherwise noted, all payments stated below are subject to applicable taxes, deductions and withholdings. This package includes:
>
>***
>
>- Eligibility to participate in the Prudential Long-Term Incentive Program (the "Program") in accordance with the terms of the Program as may be in effect from time to time. Subject to the appropriate approvals, Prudential will provide you an award in 2009 and 2010 pursuant to the Program under the Prudential Financial, Inc., Omnibus Incentive Plan. The 2009 award will have a compensation value of no less than $150,000 and the 2010 award will have a compensation value of no less than $175,000 at the time of grant, as determined by Prudential in its sole discretion in accordance with its standard compensation practices. The 2009 award will be made in the month following your appointment date and the 2010 award will be made in March 2010. To be eligible to receive these Long-Term Incentive awards, you must be actively employed with Prudential and performing your job satisfactorily at the time each award is made.
>
>In addition to the above:

> - Subject to documentation and appropriate approvals, consideration will be given to the forfeiture of your un-exercisable Hartford Financial Services and Planco equity and long-term incentives.
>
> \*\*\*
>
> Of course, this letter does not constitute a contract of employment and does not guarantee your employment for any specific period of time. Your employment with Prudential is at-will, which means that both you and Prudential may terminate your employment at any time, for any reason, with or without cause or notice.
>
> Additionally, all compensation and benefits detailed above are subject to the terms of any plan or program of Prudential under which they are made available to employees. If there is any discrepancy between what you are told, in writing or orally, by a Prudential employee or associate and the plan or program provisions, the plan or program provisions, as reasonably interpreted by the plan administrator or the Prudential, will govern.
>
> \*\*\*

(Id.) On August 28, 2009, Plaintiff signed both Offer Letters. In September 2009, Plaintiff began his employment with Prudential. (Id. at ¶¶ 5, 32.)

In 2012, Plaintiff made an "error of judgment" when he had his administrative assistant, Kelley Murphy, perform administrative review functions. (Id. at ¶ 35.) After receiving a poor performance review by Plaintiff, Murphy complained to Prudential about these assigned tasks. (Id. at ¶ 36.) On April 3, 2012, Plaintiff was interviewed by Prudential regarding Murphy's complaints, and on April 23, 2012, Plaintiff resigned from Prudential. (Id. at ¶ 42.)

Sometime after his resignation, Plaintiff realized that his Prudential Incentives did not have the same vesting schedule as his Hartford Incentives. (Id. at ¶ 42.) Instead, the Prudential Incentives were set to vest three years after Plaintiff joined Prudential. (Id. at ¶ 44.) Because Plaintiff resigned before three years had passed, his Prudential Incentives did not vest. As a result, Plaintiff claims to have suffered a loss of at least $1.4 million. (Id. at ¶ 43.)

### III.     STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

5

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

### A. Plaintiff's Claim for Breach of Contract Will Be Dismissed

A party asserting a breach of contract claim under Pennsylvania law[1] must establish three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. Chemtech Int'l. Inc. v. Chemical Injection Techs., Inc., 247 Fed. Appx. 403, 405 (3d Cir. 2007).

The parties do not dispute that the Offer Letters constitute a contract. Rather, Plaintiff makes two arguments regarding the terms of the contract. First, Plaintiff contends that under the terms of the Offer Letters, Prudential had a duty to match the Hartford Incentives, including the duty to vest the Prudential Incentives at the same time that the Hartford Incentives would have vested. (Doc. No. 1-6 at ¶ 48.) Second, Plaintiff contends that the contract not only consists of the terms of the Offer Letters, but also includes oral representations made between the parties. (Doc. No. 6-1 at 7.) The Court will address each argument seriatim.

---

[1] Although the Prudential Incentive Program provides that it will be governed by New Jersey law, Plaintiff alleges that his claims are governed by Pennsylvania law. (See Doc. No. 5, Ex. A at § 12.10). Defendants state that they are not aware of any differences between New Jersey and Pennsylvania law on the issues that are the subject of Plaintiff's Motion. (Doc. No. 5 at n. 3.) Therefore, both parties have analyzed the claims under Pennsylvania law, and the Court will do the same.

Both Offer Letters state that Plaintiff will be awarded a special 2009 Long-Term Incentive award to be made under the Prudential Financial Inc. Omnibus Incentive Program ("Prudential Incentive Program"), in accordance with the terms of that Program.  The August 21, 2009 Offer Letter states that Prudential will provide Plaintiff an award in 2009 and 2010 "pursuant to the Program under the Prudential Financial, Inc., Omnibus Incentive Plan."  (Doc. No. 1-6, Ex. 1.)  The August 27, 2009 Offer Letter also states that Plaintiff will be granted a special 2009 Long-Term Incentive award, which will be "made under the Prudential Financial Inc. Omnibus Incentive Program ("Program") in accordance with the terms of the Program that may be in effect from time to time."  (Id.)  Under Pennsylvania law, "where one contract refers to and incorporates the provisions of another, both must be construed together." Volunteer Firemen's Ins. Servs., Inc. v. Fuller, No. 12-2016, 2012 WL 6681802,*7 (Dec. 21, 2012) (citing Shehadi v. N.E. Nat'l Bank, 474 Pa. 232 (Pa. 1977)).  Moreover, "where the terms of a contract are clear and unambiguous, courts are required to give effect to that language. Guy M. Cooper, Inc. v. East Penn School Dist., 903 A.2d 608, 613 (Pa. Commw. Ct. 2006).  Because the Offer Letters clearly and unambiguously state that the terms of the Prudential Incentive Program apply to the Prudential Incentives, the terms of that program will be construed together with the terms of the Offer Letters.

Under the Prudential Incentive Program, "one-third (1/3) of each Option granted pursuant to the Plan shall become exercisable on each of the first three (3) anniversaries of the date such Option is granted."  (Doc. No. 5, Ex. A at § 6.3.)  All unexercised options became forfeited upon Plaintiff's resignation, without regard to their vested status.  (Id. at § 6.7(e).)  Likewise, all of Plaintiff's restricted stock is subject to a three-year restricted period and is forfeited upon his resignation.  (Id. at §§ 8.5, 8.7(e).)  The Offer Letters, which Plaintiff signed, clearly state that

these terms apply to the Prudential Incentives that were given to Plaintiff. While the Offer Letter of August 21, 2009 also states that consideration was given to the forfeiture of Plaintiff's un-exercisable Hartford Financial Services and Planco equity and long-term incentives, it does not follow that the vesting schedule of the Hartford Incentives would automatically apply to the Prudential Incentives instead. No language in the Offer Letters supports the claim that the same vesting, forfeiture, dollar amount, or any other specific terms of the Hartford Incentives would apply to the Prudential Incentives. Rather, the plain language of the Offer Letters provides that the terms of the Prudential Incentive Program will govern the Prudential Incentives.

Plaintiff alleges that oral representations were made to him that the vesting period of the Hartford Incentives would similarly apply to his Prudential Incentives. However, even if oral promises were made to Plaintiff, the Offer Letter of August 21, 2009 states that they are not binding:

> If there is any discrepancy between what you are told, in writing or orally, by a Prudential employee or associate and the plan or program provisions, the plan or program provisions, as reasonably interpreted by the plan administrator or the Prudential, will govern.

(Doc. No. 1-6, Ex. 1.) Under these terms, even if a Prudential employee did tell Plaintiff that the Hartford Incentives vesting schedule would apply to his Prudential Incentives, such oral representations conflict with the terms of the Prudential Incentive Program and therefore are not binding. As noted above, the Prudential Incentive Program provides that one-third of each Option vests on each of the first three anniversaries of the date they are granted, and the restricted stock is subject to a three-year restricted period. Moreover, all unexercised options are forfeited upon Plaintiff's resignation without regard to their vested status, and all restricted stock is likewise forfeited upon his resignation. Although these terms conflict with the vesting scheduling of the Hartford Incentives, the terms of the Prudential Incentive Program govern.

Plaintiff signed both Offer Letters indicating that he had read, understood, and agreed to these conditions. Thus, Plaintiff's argument that certain oral misrepresentations modified the terms of the contract fails.

Construing the facts in the light most favorable to Plaintiff, he fails to plausibly establish that Defendants breached the contract set forth in the Offer Letters by not applying the vesting schedule of the Hartford Incentives to his Prudential Incentives. Under the plain language of the Offer Letters, it is clear that the Prudential Incentive Program governs the Prudential Incentives, and any oral representations to the contrary do not control.

### B. Plaintiff's Claim for Breach of Implied Contract Will Be Dismissed

Plaintiff also alleges a claim for breach of an implied-in-fact contract. General contract law recognizes and enforces implied-in-fact contracts. Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery, and Tobacco Workers' Intern. Union of Am., 28 F.3d 347, 355 (3d Cir. 1994). An implied-in-fact contract is one "where the parties assent to the formation of a contract, but instead of being expressed in words, the intention to infer obligation is inferred from the conduct of the parties in light of surrounding circumstances including a course of conduct." Highland Sewer and Water Auth. v. Forest Hills Mun. Auth., 797 A.2d 385, 390 (Pa. Commw. Ct. 2002).

However, "no implied-in-fact contract can be found when the parties have an express agreement dealing with the same subject." Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1229 (3d Cir. 1987). Moreover, where the parties deliberately put their agreement in writing, the writing is not only the best, but the only evidence of the agreement. "All preliminary negotiations, conversations, and verbal agreements are merged in and superseded by the subsequent written contract . . . ." Mellon Bank Corp. v. First Union Real Estate Equity and

9

Mortg. Invs., 951 F.2d 1399, 1405 (3d Cir. 1991) (citing Gianni v. R. Russel & Co., 281 Pa. 320 (1924)).

Here, Plaintiff contends that he entered into an implied-in-fact contract with Prudential arising from the conduct of the parties.  (Doc. No. 1-6 at ¶¶ 52-53.)  Specifically, Plaintiff argues that when he left The Hartford in reliance on Prudential's promise to give him consideration in the form of the Prudential Incentives, it created an implied-in-fact contract that included the same vesting schedule for the Prudential Incentives as the Hartford Incentives.  (Id.)  This argument is unavailing for several reasons.  First, this alleged implied-in-fact contract relates to the same subject matter as the Offer Letters.  As stated above, an implied-in-fact contract cannot be found when the parties have an express agreement dealing with the same subject matter. Further, any promises made to Plaintiff prior to his signing the Offer Letters were merged into and superseded by the terms of the written Offer Letters.  Accordingly, Plaintiff fails to allege a sufficient claim for breach of an implied-in-fact contract, and that claim will be dismissed.

### C. Plaintiff's Claim for Unjust Enrichment Will Be Dismissed

Unjust enrichment is an equitable doctrine.  See Mitchell v. Moore, 729 A.2d 1200, 1203 (Sup. Ct. Pa. 1999) (citations omitted).  Where unjust enrichment is found, the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant.  Id.  This contract, referred to as either a quasi-contract or a contract implied in law, requires the defendant to pay to the plaintiff the value of the benefit conferred.  Styer v. Hugo, 619 A.2d 347, 350 (1993).  Under Pennsylvania law for quasi-contracts, a claim of unjust enrichment must allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would

make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. Global Ground Support, LLC v. Glazer Enters., Inc., 581 F.Supp.2d 669, 675 (E.D. Pa. 2008) (citations omitted).

However, when the subject matter of a dispute is covered by an express contract, a plaintiff cannot pursue a quasi-contractual claim for unjust enrichment. Royale Luau Resort, LLC v. Kennedy Funding Inc., No. 07-1342, 2008 WL 482327, at *10 (D.N.J. Feb. 19, 2008) (citing St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n, No. 04-4540, 2005 WL 1199045, at *7 (D.N.J. May 18, 2005); see also In the Matter of Penn Cent. Transp. Co., 831 F.2d at 1230 (applying similar Pennsylvania law in rejecting unjust enrichment claim where express contract existed).

Here, Plaintiff contends that he conferred a tangible benefit on Prudential by performing the work demanded as part of his employment. (Doc. No. 1-6 at ¶¶ 58-59.)  In return for these benefits, Plaintiff expected to receive Prudential Incentives equal to his Hartford Incentives.[2] According to Plaintiff, when Prudential failed to pay him the full value of the Prudential Incentives because they were not vested, it resulted in Prudential being unjustly enriched at his expense.

This argument is the same as Plaintiff's argument on the breach of contract claim.  In support of his claim for unjust enrichment, Plaintiff similarly argues that he is entitled to the Prudential Incentives under the same vesting schedule as the Hartford Incentives, as provided in the Offer Letters.  As described supra, the plain language of the Offer Letters states that the

---

[2] In the Complaint, Plaintiff states that he expected to receive remuneration in the form of the Hartford Incentives promised to him at the time of his hire at Prudential. (Doc. No. 1-6 at ¶¶ 60-65.)  The Court interprets this allegation to mean that Plaintiff expected to receive the Prudential Incentives in an amount equal to the Hartford Incentives and with the same vesting schedule.

Prudential Incentive Program governs the Prudential Incentives.  Because the Offer Letters constitute an express contract, which was not breached, and the same facts are relied on to support Plaintiff's claim for unjust enrichment, this latter claim also fails and will be dismissed.

### D. Plaintiff's Claim for Breach of Fiduciary Duty Will Be Dismissed

A fiduciary relationship exists where there is a "special relationship" between parties, which involves confidentiality, special trust, or fiduciary responsibilities.  Siematic Mobelwerke GmbH & Co. v. Siematic Corp., No. 06-5165, 2009 WL 2526436, *4 (E.D. Pa. Aug. 12, 2009).  "A fiduciary relationship does not arise merely because one party relies on and pays for a specialized skill or expertise of another party.  eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 23 (Pa. Super. Ct. 2002).  In an employment context, "an employer-employee relationship does not, in and of itself, give rise to a fiduciary relationship."  U.S. v. Kensington Hosp., 760 F.Supp. 1120, 1133 (E.D. Pa. 1991) (citations omitted); see also Diaz v. Rent-A-Center, Inc., No. 03-3763, 2004 WL 241505, *3 (E.D. Pa. Feb. 6, 2004) ("Although the state courts have recognized a 'confidential relationship,' requiring one party to act with the utmost good faith for the benefit of the other party in the areas of fiduciaries and estates, we find no precedent to extend this protection to [the] employer/employee relationship.") (citations omitted)).

Here, Plaintiff was an at-will employee of Prudential.  As its employee, Prudential did not owe Plaintiff a fiduciary duty, despite the fact that Plaintiff may have owed one to Prudential.  As noted above, in an employment context, an employer-employee relationship does not in and of itself give rise to a fiduciary relationship.  While in certain situations employees may owe fiduciary duties to their employers, the converse is not necessarily true.

The case that Plaintiff relies on in support of breach of fiduciary duty claim, McDermott v. Party City Corp., is inapplicable to the instant case.  11 F. Supp. 2d 612 (E.D. Pa. 1996).  In

McDermott, the McDermott Group alleged that its former employee owed a fiduciary duty to the company as the manager of its store and an agent of the McDermotts. 11 F. Supp. 2d at 617. In analyzing this claim, the court examined when a business or agency association forms the basis of a fiduciary relationship. It did so, however, in the context of the duty owed by an employee to an employer, not the other way around. Again, while Plaintiff may have owed a fiduciary duty to Prudential, Prudential did not owe one to Plaintiff as its employee. Therefore, the McDermott analysis is inapplicable to the situation at hand.

Plaintiff further argues that Prudential breached its fiduciary duty to him by treating him differently than other senior executives. Specifically, Plaintiff states that he placed a trust in Prudential "that his actions were being handled similar to how others in his same position would have been treated." (Doc. No. 6-1 at 12.) In the absence of a fiduciary relationship between Prudential and Plaintiff, there is no basis for this claim. A fiduciary relationship does not arise merely because one party relies on another or because some measure of trust exists between the parties. Moreover, a fiduciary relationship does not perforce exist between an employee and his employer. Without more, the facts alleged do not state a claim for breach of fiduciary duty, and this claim must be dismissed.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY J. SEIFERT,<br><br>                      Plaintiff,<br><br>     v.<br><br>THE PRUDENTIAL INSURANCE CO. OF AMERICA, et al.,<br><br>                      Defendants. | CIVIL ACTION<br>NO. 13-7637 |

## **ORDER**

**AND NOW**, this 18th day of June 2014, upon consideration of Defendants' Motion to Dismiss (Doc. No. 5), Plaintiff's Response (Doc. No. 6), and Defendants' Reply (Doc. No. 7), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss (Doc. No. 5) is **GRANTED**.

2. The Clerk of Court shall close the above-captioned case for statistical purposes.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.